After 30 years Judge Smith, age has taken a toll, but nonetheless it's my pleasure to represent the other Brown brother. Now, we had the case we just talked about where Heard says that that Brown brother stole $150 or so. We've got this case where Officer Heard alleges that my client stole $30 in quarters. That my client alleges he returned to the business owner, whatever was seized. What happened in this case is the district court again resolved inferences against my client. And I urge you to look at the actual record in this and see what my client actually said. Because the district court spun this, and I say that respectfully, Judge Miller does a great job. But the district court spun this into my client allegedly admitting that this may have happened. That's not how you should read this. My client has always, on page six and seven of my brief, I point to instances in the record where my client always denied that the quarters that they say he admitted to using is for car wash money. Were the quarters that were recovered after a search at this gentleman's home, the gentleman that broke into the liquor store. And the district court's order in that, in granting summary judgment. Apologize for the delay. In that, in the summary judgment order. The district court again raised the seizure issue. And my arguments on that issue are the same on that case as it is in this case. And again, the district court, when it granted summary judgment on the federal claims, continued and addressed the state law claims too. And again, if you affirm the dismissal of federal claims, then I'm asking you to rehearse and remand with instructions to dismiss the state law claims without prejudice. Because the Arkansas Whistleblower Protection Act, if you look at the cases that have gone up the Arkansas Supreme Court, I have several of them. And the Arkansas Whistleblower Protection Act doesn't necessarily follow McDonnell Douglas. The burden shifting of the statute itself is quite a bit different. And I've had at least one state court judge agree with me. And so, in this case, again, Judge Miller found that there was probable cause. And in this particular case, he did address qualified immunity. And so. So why isn't there probable cause here? I mean, it's a relatively low standard here. I understand it's a relatively small amount of money, and that there are alternative innocent explanations. But you're arguing there was a lack of probable cause here, is that right? A complete lack of probable cause, Judge. Because my client, if you look on page six and seven of my brief, consistently denied that the district court found that he admitted that maybe, possibly, he had taken these quarters and used them in a car wash. But if you look at the context of the testimony, my argument is that the district court resolved inferences against my client. Well, aren't the inferences in the context of probable cause, right? So, I mean, I think you really have to be arguing there was an absolute lack of evidence to support probable cause. And what you just described is this ambiguity about which quarters were they. Does that necessarily undermine the finding that it was more likely than not? Or whatever we use as the standard for probable cause in this context, right? Great question. And that's a, and I agree with you that that's something you're going to have to look at. But it's hard for my client to prove a negative, first. Second, yes, probable cause is a low standard. But, and had my client admitted that yes, he may have used these quarters inappropriately, I would agree with you. I wouldn't be here arguing it. Well, didn't, at that point, the defendants just, just, didn't they simply forward the case then to the prosecutor? And was that the end of their participation in the investigation? Or how did that play out? No, sir, and I had to text somebody to get that record site, because it wasn't apparent to me this morning. But no, at app 648 R record document 33-3, line 20 through 24. Mr. Tilley says that, that Heard told him that the quarters had not been returned. And at app 641, line 19, app 642 record doc 33-3, line 3. Kobe Heard, during the preparation of the criminal trial, again reiterated his false statements. Because, recall, the quarters had been returned to the victim many, many, many months before. But yet, Heard continued to allege and mislead the prosecutor. Also recall, the Arkansas State Police- What's the misleading? The original report was that Edward Brown had the quarters, and then subsequently they get returned. Yes. But the allegation was that he had them inappropriately for some period of time. And he denies that. And he denies that. He denies that. Why didn't that just go to investigations and let them determine it? Well, it did. The Arkansas State Police investigated both these charges and found no probable cause. And again, Jordan Tilley said repeatedly, no Kobe Heard statement, no charges. And the district court failed to give that evidence appropriate weight. Kobe Heard was trying to get my client prosecuted during the trial prep. I, we kept, the record reflects, we kept telling people, the victim has the $30 in quarters. And you juxtapose this with the failure to investigate Kobe Heard for using excessive force on an American citizen. Does the record- Wasn't he subsequently terminated? Yes, for that. But he wasn't criminally investigated. That's the priorities in DeShay County, Arkansas, apparently. But again, you asked me a great question. I want to make sure that I've answered it. Had he admitted that those were the quarters, had my client admitted that those were the quarters that were recovered at the suspect's house, that the suspect stole from liquor store, that might be probable cause. And I probably wouldn't be here, but that's not what happened. And the Arkansas State Police recognized that that's not what happened. The Arkansas State Police told the prosecutor that there was no probable cause to support any one of these charges. Yet the prosecutor, a reasonable jury could find, at Kobe Heard's urging, continued with these charges. I mean, Arkansas State Police is the gold standard in Arkansas locally for investigating corruption. Jay Pickett goes all over the state investigating corrupt police officers. And in this case, the prosecutor chose to ignore. The Arkansas State Police told Mr. Tilley, no probable cause. But Mr. Tilley continued to work with Mr. Heard to maintain this illegal prosecution. And recall, it's not only the institution. Let's say he did have probable cause at the beginning. When he got facts to demonstrate that there was no probable cause, like the quarters had been retained, that's a separate issue. That's a separate violation. So what does the record show about how the quarters were returned? By whom? The record doesn't, I wasn't able to figure that out. Well, is this the point where the appellant said that the quarters may have been given to him and may have been used to wash his vehicle? That's what the district court found. But if you look at my argument, that my statement of the facts, pages six and seven on my brief, you will see what a reasonable inference is that addresses that testimony. He always says that the quarters that he was referencing was not the quarters that were the victims, that were recovered from the, and perhaps it was my failure to be as clear. Judge Smith can tell you, sometimes I'm not the clearest thing and clearest arguer in the world, but I do my best. And I'd just urge you to look at pages six and seven of my statement of facts and see what the appropriate reasonable inference should have been. Thank you, I'll reserve my three minutes. Thank you, Mr. Souter. Mr. Wren. May it please the court, my name is Keith Wren, I represent the city of Dermot and the other defendants in this case. I want to address a statement that was made by my esteemed opposing counsel in this case and also in the previous case that the prosecutor stated in his deposition that without a statement from Kobe Heard there would have been no prosecution. While that may be true, I think that what he was saying was if Kobe Heard had not reported these violations of law by his coworkers, there never would have been an investigation that then led to a prosecution. It is not that the prosecutor was saying that he was relying solely on a statement by Officer Heard in order to decide to make the decision to prosecute. What else was in the record that he relied on? Well, okay, and so that gets exactly to Judge Smith's question a moment ago that hit the nail on the head was what was misleading. And so there isn't anything misleading about Officer Heard's statement. What Officer Heard reported was that he saw a report by Sergeant Brown, the plaintiff, that referenced, that was about the burglary and that they went to the suspect's home and they recovered quarters. And then Officer Heard observed that the report of the property receipt, returning the property to the victim, did not mention any quarters. And that's what he reported to his chief. And then he and the chief went to the victim, who then said that the quarters were never returned. So then they turned the matter over to the Arkansas State Police. The Arkansas State Police was never, that investigator was never able to talk to the victim. However, they did talk to the plaintiff. And that is where I think the probable cause, the strongest probable cause comes from, from the plaintiff's own statement. The first statement he said was that the quarters were never recovered and he went to the victim and told the victim that the quarters were never recovered. Okay, so let's just assume for a moment that that's true. His report that he, in that same statement that the state police, the plaintiff admitted was accurate. In that same statement that he reported, he says he recovered quarters. Okay, well then where did they go? If they didn't belong to the victim of the burglary, why didn't he return them to the man that he got them from? He should have returned them to someone, but he didn't. And when confronted with that information, the plaintiff then said, well, maybe they're in the trunk of my car, or maybe I used them to wash my car with. So I think that that, in and of itself, is an admission that he had the property. He maintained control over it in an improper way, and that he may well have had a pecuniary gain from that property. So based on that information, the prosecutor decided to file charges. And the prosecutor said that he did contact the victim, who at that time said that some of the money had not been returned, and that the prosecutor took that to mean that it was the bag of quarters. Now later, we all know that the victim later said that the money was returned, and then, of course, the prosecution had no case, and he no longer processed it. And is it nowhere in the record how the quarters got back to the store? Well, I would maintain, Your Honor, that they may have and they may not have. I don't know that that's true, and I understand that the victim did tell the prosecutor later that they were returned. I don't know that that's entirely accurate. But there's no background to how they got back to him. No. If they did. If they did, but I still maintain that the plaintiff, in his statement, when he eventually admitted that he had them, never said that he returned them. He never said to the state police that, oh, and by the way, I forgot to mention that I took this money back to the victim. In fact, the very first words out of his mouth in that statement was that I went to the victim and told him that we never recovered any quarters. So something is amiss. And I think that the plaintiff's conflicting statements and the fact that he documented the recovery of the quarters would lead a reasonable person to believe that a crime had been committed, tampering with evidence, abuse of office, or theft of property. I also would like to address the statement by my opposing counsel that these state law claims should be remanded. I think that's a moot point. Stated on page 33 of the Apple East brief is an Arkansas Supreme Court case of Graham versus Cawthorn. And in that case, that's what happened, was that state law claims were remanded after the federal claims were dismissed. And the Arkansas Supreme Court said, okay, but the Arkansas State Circuit Court is still bound by the findings of the federal court. And that you can't show up and relitigate the same issues. And I think that's what would happen here. With regard to the Arkansas Whistleblower Act and the statement that it has a different standard, well, it's still a moot point. These same factual findings would still apply. Well, what's factual findings? This was summary judgment, correct? Well, yes, it's correct, but that it's undisputed that there was a, the Whistleblower Act claim is based upon some alleged reporting of misconduct violations of law. Let's just assume for a moment that that occurred. Then that would have occurred sometime around November of 2019. Whereas the plaintiff was not terminated from his job until a year and a half later in April of 2021, and only after the criminal charges were filed. And the plaintiff, in his brief to the district court and to this court, stated several times that the only reason that he was fired was because of the criminal charges. And so it would be a waste of judicial resources to send this matter back to an Arkansas court for them to have to then come to the same conclusion based upon the findings of the district court and this court. I will stand for further questions. I don't see any. Thank you, Mr. Redd. Now, that argument a jury may buy, but that's not the standard at this stage of the proceedings. Now, bear in mind that the criminal charges were not only about the quarters. Officer Heard alleged that my client tried to bribe him. And remember, it's no longer the law that if there's probable cause for one violation, then there is no claim. The Supreme Court has made that clear in that Shevetta case. I can't ever pronounce it. So, Kobe Heard was the only witness to this alleged conversation, hey, he tried to bribe me. When you look at page six and seven of my brief, I cite to you what my client actually said about the quarters. A jury, a reasonable jury, I can't tell you if they would believe the defendant's interpretation or not. But assuming that you have to take what my client says is true, I think there's a genuine issue of material fact. Now, with respect to Cawthorn, Cawthorn was my case. And when you read Cawthorn, it reverses part of this case called Guidry, G-U-I-D-R-Y. And Guidry, Cawthorn reversed part of Guidry, but it did not reverse the part of Guidry that says arguable probable cause is not a defense to a common law malicious prosecution claim in Arkansas. That is the difference. And so, I appreciate your patience with me. Again, just for record purposes, I don't think qualified immunity exists. And I appreciate you all getting me up and getting me out. Thank you, Mr. Souter. Thank you. Thank you also, Mr. Wren. The court appreciates counsel's participation and argument before us this morning. We'll continue to study the matter and render a decision in due course. Thank you. Thank you, Your Honor. Madam Clerk, would you call the case?